**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Chelsea J. Kline, ) | CASE NO. 1:08 CV 2284 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| Vs. ) | |
| ) | |
| Michael J. Astrue, ) | **Memorandum of Opinion and Order** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### INTRODUCTION

This matter is before the Court upon the Report and Recommendation of Magistrate Judge David S. Perelman recommending that the decision of the Commissioner be reversed.  For the reasons that follow, the Report and Recommendation is ACCEPTED in PART and REJECTED in PART.   This case is REMANDED to defendant for further consideration consistent with this opinion.

### FACTS

Plaintiff, Chelsea Kline, filed this lawsuit challenging defendant's denial of her application for supplemental security income ("SSI") benefits and disability insurance ("DIB")

1

benefits. Plaintiff suffers from multiple sclerosis and fibromyalgia. Plaintiff's treating physician opined that plaintiff is unable to work. The Administrative Law Judge ("ALJ") rejected the opinion of plaintiff's treating physician and, instead relied on the opinion of Dr. Nusbaum, a non-treating testifying expert.

**ANALYSIS**

The Magistrate Judge recommends that this Court reverse the decision of the ALJ and award benefits. According to the Magistrate Judge, the ALJ misapplied the treating physician rule and erred in determining that plaintiff's credibility is not supported by substantial evidence. Defendant objects on the grounds that the Magistrate Judge improperly applied the treating physician rule. Defendant has not directly objected, however, to the Magistrate Judge's conclusion regarding the ALJ's analysis of plaintiff's credibility.

For the following reasons, the Court agrees with the Magistrate Judge that the ALJ failed to properly apply the treating physician rule with respect to plaintiff's claim of fibromyalgia. The Court concludes, however, that remand of this matter is appropriate for further consideration of plaintiff's claim in accordance with this Opinion.

Under Sixth Circuit law, the opinion of a treating physician is given controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (quoting 20 C.F.R. § 404.1527(d)(2)). In the event the ALJ concludes that the medical opinion is inconsistent with the other substantial evidence, the opinion may be given less than controlling weight, but should not be rejected. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) (Soc. Sec. Rul. 96-2p).

Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.*  In the event the treating physician's opinion is not given controlling weight, the ALJ must determine how much weight is appropriate for the opinion and must consider: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician's conclusions; and (3) any specialization of the treating physician. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

In this case, it appears that the ALJ entirely rejected the opinion of plaintiff's treating physician, Dr. Wood, and failed to assign it any weight.  According to the ALJ, his opinion is inconsistent with the "greater weight of the evidence."  The ALJ also faulted Dr. Wood for relying on the subjective report of the symptoms and limitations expressed by plaintiff, even though fibromyalgia, by definition, is not typically subject to objective medical testing.  The ALJ did not analyze the factors set forth in 20 C.F.R. § 404.1527.  Moreover, the ALJ wholly fails to assign *any* weight to the opinion of Dr. Wood.  In this case, certain factors tend to support affording Dr. Wood's opinion great weight.  Dr. Wood appears to have treated plaintiff for 17 years and appears to have been intimately involved in plaintiff's care, yet his opinion was rejected in its entirety.  In rejecting Dr. Wood's opinion, the ALJ "accept[ed] and adopt[ed]" the opinion of Dr. Nusbaum.  The ALJ concluded that Dr. Nusbaum's opinion was supported by the "objective clinical and laboratory findings."  Once again, however, the ALJ fails to recognize that fibromyalgia is typically not capable of finding support in "objective clinical and laboratory findings" *See, e.g., Rogers*, 486 F.3d at 245 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon

3

objective evidence are not particularly relevant."). The ALJ further noted that Dr. Nusbaum's conclusions are corroborated by the claimant's neurologist, Dr. Eubank.  As an initial matter, Dr. Eubank treated plaintiff nearly nine months prior to her alleged onset date.  In addition, Dr. Eubank appears to have treated plaintiff solely for multiple sclerosis.  Thus, to the extent the ALJ purported to rely on his opinion for purposes of the severity of her fibromyalgia, the reliance is misplaced.  Moreover, the Court is greatly disturbed that Dr. Nusbaum suggested that plaintiff's sensitivity to pain medication may be a "lifestyle choice.[1]"  As this Circuit has noted, an ALJ cannot rely on the non-use of medications when the claimant suffers from side-effects.  *See, Germany-Johnson v. Comm'r Soc. Sec.,* 313 Fed. Appx. 771, 776 (6th Cir. 2008)(*citing with approval, Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).  The Court further rejects the government's assertion that the treatment notes from Dr. Racke, a treating neurologist, support the ALJ's conclusion.  Even a cursory review of these notes reflect that Dr. Racke was assessing plaintiff's multiple sclerosis.  There is nothing suggesting that he treated or assessed plaintiff for fibromylagia.  If anything, his notes confirm that plaintiff's greatest difficulties stem from joint pain.  Despite this, the ALJ wholly rejected the opinion of Dr. Wood and adopted the opinion Dr. Nusbaum and, more importantly, failed to properly analyze the weight to be afforded to the opinion of Dr. Wood, plaintiff's treating physician.[2]

---

[1] The Court disagrees with the government's suggestion that this testimony is expressly limited to plaintiff's need to rest during the day.  Clearly, the question included a reference to the fact that plaintiff is unable to take pain medication.

[2] The ALJ makes much of the fact that Dr. Wood's opinion relies extensively on plaintiff's complaints of subjective pain.  Yet, Dr. Wood referred plaintiff to Dr. Cannell, a physiatrist, who concluded that plaintiff suffers from fibromyalgia based on the

Although the government makes no specific objection to the Magistrate Judge's conclusion that the ALJ erred in concluding that plaintiff's credibility is not supported by substantial evidence, the Court will nonetheless address this issue. The Court agrees with the Magistrate Judge that the ALJ erred in his analysis of plaintiff's credibility.

Although credibility determinations are largely within the province of the ALJ, the ALJ is not permitted to "make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 246 (citing Soc. Sec. Rul. 96-7p.

> Social Security Ruling 96-7p also requires [that] the ALJ explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.' In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence. And given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important.

*Id*. at 248.

As in *Rogers*, the assessment by the ALJ does not comply with the regulations. In discounting plaintiff's credibility, the ALJ incorrectly extensively relied on the general lack of objective medical evidence, including the fact that she has never been treated in an emergency room or required inpatient hospitalization. (R. 35). *Id*. at 249 ("...the nature of fibromyalgia

---

> presence of trigger points. Dr. Nusbaum's opinion does not reflect any medical evidence suggesting that Dr. Wood's limitations are unreasonable. He essentially says, "that's his opinion, mine's different." Given that the severity of fibromyalgia is largely dependent on subjective claims of pain it is especially important to consider the opinion of the treating physician, as opposed to a non-examining expert. *See, Rogers*, 486 F.3d 246 ("Neither Dr. Leeb nor Dr. Rath are treating physicians, a fact of special significance given the unique nature of fibromyalgia.")

itself renders [an]... over-emphasis upon objective findings inappropriate").[3]

In addition, the ALJ noted that plaintiff was "able to engage in a wide variety of activities." (R. 35). Specifically, the ALJ noted as follows,

> [Plaintiff] testified that could stand for 30 minutes, walk two blocks, sit for 30 minutes, and lift/carry 10 pounds for short distances.... She testified that she is able to take care of her personal needs although at times she needed assistance with dressing. She does stretches for five to ten minutes, three times a week. She further testified that she drives, grocery shops once a week, and dines out once a week. She does some gardening and plays solitaire once a month. As to her daily activities, she testified that she cooks, washes dishes, does laundry and takes care of her cat.

(R. 34).

Plaintiff's testimony, however, demonstrates that the ALJ mischaracterized the scope of her ability to perform daily activities. In reality, she testified that she needs help dressing herself two to three times per week, does dishes only once or twice a week, does one load of laundry a week, is unable to dust or vacuum, and, although she feeds and pets her cat, she is unable to change its litter box. ( R. 440-444). With regard to plaintiff's gardening activities, she testified that she will "occasionally go outside and set [sic] and maybe pull a weed or two but that's about it." ( R. 442).

---

[3] Again, like *Rogers*, the ALJ failed to discuss or consider the length and course of treatment with Dr. Wood, and the use or reasons for non-use of medications. In fact, the ALJ's decision points out in two places that the only side effect plaintiff has from her medications is "dry mouth." It is entirely unclear why the ALJ relies on this evidence. Plaintiff testified, and the medical records from various sources overwhelmingly note, that plaintiff is unable to take pain medications due to the adverse side effects she suffers, including severe drowsiness and a feeling of being "dopey." Plaintiff's testimony regarding dry mouth is directed at the medications she is *able* to take. These two medications, Zoloft and Lipitor, however, have nothing to do with pain reduction and appear completely irrelevant to an analysis of her subjective complaints of pain.

6

Finally, the ALJ relied on Dr. Nusbaum's opinion that plaintiff's statements regarding her abilities were not credible because it was a "lifestyle" choice based on "medical evidence of record."  As set forth above, this comment came in response to a question regarding pain medication and plaintiff's need to lie down frequently during the day.  The Court agrees with the Magistrate Judge that side effects caused by pain medication do not amount to a "lifestyle" choice.  In fact, the ALJ never addressed plaintiff's sensitivity to pain medication.  Moreover, to the extent the comment was directed at plaintiff's need to lie down and failure to exercise, the ALJ fails to address whether plaintiff is *able* to engage in exercise or receives any relief therefrom.  In fact, the evidence demonstrates that plaintiff does do stretching exercises regularly, but is able to do so for only a very limited period of time.  In addition, the medical records indicate that plaintiff participated in physical therapy, but no long-term benefits were achieved.

In total, the Court finds that the ALJ erred in assessing plaintiff's credibility.

On remand, the Court instructs the ALJ to reevaluate this matter and to properly apply the treating physician rule and reanalyze plaintiff's credibility consistent with this Opinion and the mandates from the Administration.[4]  The Court suggests that the ALJ review *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007).

### **CONCLUSION**

This Court hereby ACCEPTS in PART the Report and Recommendation of Magistrate Judge David S. Perelman.  This case is REMANDED to defendant for further consideration

---

[4] The Magistrate Judge recommends that the Court award benefits. This recommendation is rejected in that the Court is not convinced that all factual issues have been resolved.  Accordingly, remand is appropriate.

7

consistent with this opinion.

        IT IS SO ORDERED.

        /s/ Patricia A. Gaughan
        PATRICIA A. GAUGHAN
        United States District Judge

Dated: 12/2/09